UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

TERRELL STATON,
    Plaintiff,

    v.

JOHN HOLZBACH, et al.,
    Defendants.

No. 3:20-cv-631 (SRU)

## INITIAL REVIEW ORDER RE: AMENDED COMPLAINT

Terrell Staton, currently confined at Carl Robinson Correctional Institution in Enfield, Connecticut and proceeding *pro se*, filed the instant action under 42 U.S.C. § 1983. On October 16, 2020, I dismissed Staton's initial complaint and afforded him an opportunity to file an amended complaint to correct deficiencies regarding the claims that were possibly time-barred based on the statute of limitations and the defamation claim arising out of his 2018 arrest, as well as the abuse of process, equal protection, and deliberate indifference claims relating to his 2019 arrest and subsequent conviction. *See* Doc. No. 34 at 13.

Staton subsequently filed an amended complaint naming the following fifteen defendants: Prosecutor Stephen Sedensky III; Homicide Detective Daniel Trompetta; Detective Craig Martin; Judges Frank Ioanatti, Gary White, and Patrick Carroll[1]; Special Public Defenders Vickie Hutchinson, Dennis McDonough, and Jennifer Tunnard; Investigator Laura Lawhon; Police Officers Shaun McColgan, John Basil, William Ferrell, and Ronald Inconstanti; and the estate of Danbury Police Officer John Hassiak.

For the reasons that follow, Staton has failed to cure the defects identified in the initial review order. His complaint is therefore **dismissed**.

---

[1] The complaint misspells Judge Carroll's name; I use the correct spelling throughout the order.

**I.      Standard of Review**

Under 28 U.S.C. § 1915A, I must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b).  Although detailed allegations are not required, the complaint must include enough facts to afford the defendants fair notice of the claims and the grounds upon which they are based.  *See Bell Atlantic v. Twombly*, 550 U.S. 544, 555–56 (2007).  In addition, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  Conclusory allegations will not suffice.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Nevertheless, it is well-established that "[*p*]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'"  *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude afforded to *pro se* litigants).

**II.     Allegations[2]**

In 2001, Staton filed a defamation action that was ultimately dismissed.  *See* Compl., Doc. No. 35, at ¶ 1.  The complaint references Judge White and Judge Carroll in connection with the defamation lawsuit but does not cogently explain how they were involved.

In 2005, two detectives, who are not named defendants, asked Staton to be deposed for another individual's false imprisonment lawsuit.  *See id.*  Staton declined to do so, citing the

---

[2] The facts are drawn from the amended complaint, and I assume them to be true and draw all reasonable inferences in Staton's favor.  *See Ashcroft*, 556 U.S. at 678–79.

Fifth Amendment. *See id.* He was subsequently "vilified by prosecutors and even appointed counsel." *See id.* Staton appears to further allege that Judge White made inappropriate comments on April 10, 2000 and in October 2007 at a sentencing hearing. *See id.*

Since 1998, the Danbury police have harassed Staton with excessive police presence in response to minor infractions. *See id.* at ¶ 2. In particular, during traffic stops or arrests that occurred on December 6, 1998, September 16, 2006, November 9, 2006, June 6, 2018, and May 14, 2019, the police brought in back up of more than four officers, which was humiliating for Staton and his family. *See id*. at ¶¶ 2, 3, p. 7.

In January 2007, Staton was acquitted of threatening and disorderly conduct charges. *See id.* at ¶ 9. Officer Hussiak, who arrested Staton on November 9, 2006, was not cross-examined. *See id.* at ¶ 6. Following his acquittal, Prosecutor Sedensky vowed to convict Staton of all other charges and has worked diligently toward that end. *See id.* at ¶ 6. Sedensky maliciously prosecuted Staton in September 2007, September 2008, and January 2009, allegedly in violation of Staton's right to be free from double jeopardy under the Fifth Amendment. *See id.* at ¶¶ 5, 9. In January 2009, Sedensky also opposed a motion to dismiss charges on speedy trial grounds. *See id.* at ¶ 6.

Attorney Tunnard represented Staton during the criminal proceedings in September 2007, September 2008, and January 2009, and failed to defend Staton with "vigor and passion." *See id*. at ¶¶ 3, 4. Although Tunnard was "asked to investigate a matter to ensure a fair and impartial trial," she, along with her investigator, "negated to execute the impact that witnesses may have to ensure a formidable defense." *Id.* at ¶ 3. Staton further alleges that, in court, he encountered "manipulative and barratrous courtroom ethics." *See id.* He continues to suffer emotional harm from those events. *See id.*

Staton appears to contend that Attorney Tunnard worked in collusion with Sedensky; she never objected to Sedensky's conduct or motives, nor did she file grievances against him. *See id.* at ¶¶ 7, 8. In particular, when Staton was standing trial in 2007 for sale of narcotics, Tunnard did not challenge a witness's testimony that Staton had previously been arrested for drug sales, which was false and tainted the jury. *See id.* at ¶ 10.

Tunnard filed a habeas petition to rectify Sedensky's attempt in January 2009 to have Staton sentenced notwithstanding Sedensky's inability to produce a witness to support the "fabricated" allegations against Staton. *See id.* at ¶ 7. Staton, however, ultimately accepted a sentence of six months on the possession of narcotics charge because Sedensky acted "with such malicious intention." *See id.*

**III.** **Discussion**

A. Claims Against McDonough, Hutchinson, Martin, Judge Iaonatti, and Trompetta

As a preliminary matter, Staton articulates no allegations against Special Public Defenders Dennis McDonough or Vickie Hutchinson, Detective Craig Martin, or Judge Frank Iaonatti in his amended complaint. In addition, the complaint does not tie Trompetta to any particular claim; it only appears to allege that he began to date Staton's paid counsel, which prompted Staton's counsel to terminate her representation of Staton. All claims against those defendants are therefore **dismissed** under 28 U.S.C. § 1915A(b)(1).

B. Claims against Prosecutor Sedensky

As I discussed in my initial review order, Staton's claims against Sedensky for his decision to prosecute Staton on the remaining charges fail because that decision amounts to conduct that is "intimately associated with initiating or presenting the State's case," which renders Sedensky protected from suit by prosecutorial immunity. See *Flagler v. Trainor*, 663

F.3d 543, 546–47 (2d Cir. 2011).  Sedensky's allegedly improper motive does not compel a different outcome.  *See Shmueli v. City of New York*, 424 F.3d 231, 237 (2d Cir. 2005) ("Once the court determines that the challenged prosecution was not clearly beyond the prosecutor's jurisdiction, the prosecutor is shielded from liability for damages for commencing and pursuing the prosecution, regardless of any allegations that his actions were undertaken with an improper state of mind or improper motive.").  For those reasons, Staton's claims against Sedensky are **dismissed with prejudice** pursuant to 28 U.S.C. § 1915A(b)(2).

C. Claims Arising Out of the June 2018 and May 2019 Arrests

In his initial complaint, Staton asserted, *inter alia*, false arrest claims arising out of the arrests that took place in June 2018 and May 2019.  *See* Doc. No. 34, at 6–8.  I previously held that those claims were not legally viable because the charges were not terminated in Staton's favor, and dismissed them with prejudice.[3]  *See id*.  Staton also brought abuse of process, equal protection, and deliberate indifference claims relating to the May 2019 arrest and subsequent conviction; I dismissed those claims without prejudice and granted Staton leave to amend.  *See id.* at 9–11.

In his amended complaint, Staton does not cognizably plead the abuse of process, equal protection, and deliberate indifference claims relating to the 2019 arrest and subsequent conviction.  Those claims are therefore **dismissed** for the reasons set forth in my first initial review order.  *See* Doc. No. 34.

To the extent Staton seeks to add an equal protection claim arising out of the 2018 arrest, that claim falls short for the same reasons I previously dismissed his equal protection claim

---

[3] Accordingly, to the extent Staton purports to propound false arrest claims arising out of the 2018 and 2019 arrests in his amended complaint, those claims fail.

premised on the 2019 arrest: he has failed to allege that he was a member of a protected class or that he was treated differently from others similarly situated. *See* Doc. No. 34, at 10–11. Accordingly, that claim, too, is **dismissed** under 28 U.S.C. § 1915A(b)(1).

D. Claims Outside the Statute of Limitations

In his initial complaint, Staton raised claims stretching from 1998 to 2019. *See* Compl., Doc. No. 1. I previously noted that many of those claims might be barred by the statute of limitations and dismissed them without prejudice, affording Staton an opportunity to file an amended complaint to show why the claims are timely. *See* Doc. No. 34, at 4–5. As I explain below, Staton has failed to make such a showing.

The statute of limitations for a section 1983 action in federal court in Connecticut is three years. *See Thompson v. Rovella*, 734 F. App'x 787, 788–89 (2d Cir. 2018). When a section 1983 cause of action accrues is controlled by federal law. *See Wallace v. Kato*, 549 U.S. 384, 388 (2007). Under federal law, a cause of action accrues—and the statute of limitations begins to run—when the plaintiff knew "or ha[d] reason to know of the injury which is the basis of his action." *Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013) (citation omitted)*; see also Wallace v. Kato*, 549 U.S. 384, 388 (2007) (concluding that the accrual date of a section 1983 action is "when the plaintiff can file suit and obtain relief").

Because Staton filed his initial complaint on April 20, 2020, his claims, as a general matter, must have accrued on or after April 20, 2017 in order to be timely. Before I address more fully below whether certain of his claims are time-barred, I note as a preliminary matter that whether Staton continues to be emotionally impacted from the events underlying his claims is not dispositive to my analysis. As the Second Circuit has observed, "[t]he proper focus is on the time of the [unlawful] act, not the point at which the consequences of the act become[ ]

6

painful.'" *Ognibene v. Niagara Cty. Sheriff's Dep't*, 117 F. App'x 798, 799 (2d Cir. 2005) (citations omitted); *see also Mahany v. City of Buffalo Police Dep't*, 777 F. App'x 547, 549 (2d Cir. 2019) (holding that claims were time-barred despite allegations that the injuries were ongoing, explaining that a plaintiff "cannot postpone the accrual of her claims by arguing that each new injury resulting from the defendants' . . . actions extends the statute of limitations") (quotation marks omitted). Staton's allegations that he suffers from ongoing harm therefore do not render his claims timely.

1. *Claims against Judge White and Judge Carroll*

Before addressing whether the claims against Judge White and Judge Carroll are timely, I note that, to the extent those claims are premised on decisions issued or comments made during judicial proceedings, they are protected by absolute judicial immunity. It is well-established that "'judges generally have absolute immunity from suits for money damages for their judicial actions,' and 'even allegations of bad faith or malice cannot overcome judicial immunity.'" *Chris H. v. New York*, 764 F. App'x 53, 55 (2d Cir. 2019) (quoting *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009)). Judicial immunity applies where the action taken is "judicial in nature" and the judge "had jurisdiction over the subject matter before him." *Id.* (citation omitted). As is the case for other forms of official immunity, "judicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991).

At any rate, even when construing the complaint liberally and drawing all reasonable inferences in his favor, Staton has failed to establish that the claims against the judicial defendants are timely. The actions with which Staton takes issue took place from 2000 to 2008—well outside the limitations period—and the complaint does not adequately demonstrate that delaying the accrual date is warranted.

In particular, Staton has not pled sufficient facts to invoke the continuing violation doctrine. The continuing violation doctrine, when applicable, provides an "exception to the normal knew-or-should-have-known accrual date." *See Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009) (citation omitted). "It applies to claims composed of a series of separate acts that collectively constitute one unlawful . . . practice." *See Lucente v. Cty. of Suffolk*, 980 F.3d 284, 309 (2d Cir. 2020) (internal citations and quotation marks omitted). The continuing violation doctrine therefore does not apply to "discrete unlawful acts"—even when those discrete acts are part of "serial violations"—and instead applies "to claims that by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment." *See id*.

Although the continuing violation doctrine is invoked most commonly in connection with Title VII claims, the Second Circuit has extended the doctrine to various constitutional claims, including equal protection and deliberate indifference claims. *See id.* (collecting cases). If the continuing violation doctrine applies, the limitations period starts to run when the defendant has "engaged in enough activity to make out an actionable . . . claim." *See id*. (citation omitted). Critically, moreover, a claim will only be considered timely under the continuing violation doctrine if the plaintiff pleads "some non-time barred acts" contributing to the violation. *Id.*

In this case, I cannot determine whether the continuing violation doctrine applies with respect to Judge White and Judge Carroll because I am unable to glean from the complaint which claims Staton is advancing against them. But even assuming the continuing violation theory could apply to Staton's claims, Staton has failed to raise a plausible inference that any actionable conduct occurred after April 20, 2017. Staton has therefore not sufficiently established that the continuing violation doctrine applies with respect to his claims against the judicial defendants.

Staton's complaint also does not plausibly suggest that equitable tolling is justified. "Equitable tolling applies as a matter of fairness where a party has been prevented in some extraordinary way from exercising his rights." *Iavorski v. INS*, 232 F.3d 124, 129 (2d Cir. 2000) (internal quotation marks and alterations omitted). Broadly speaking, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he or she has "acted with reasonable diligence during the time period [he or] she seeks to have tolled," and (2) "that the circumstances are so extraordinary that the doctrine should apply." *Zerilli-Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 80–81 (2d Cir. 2003), *as amended* (July 29, 2003) (citation omitted).

In this case, there is no indication that Staton diligently pursued the claims against Judge White and Judge Carroll during the time period—which spans over ten years—that he seeks to have tolled. Nor is there any suggestion that extraordinary circumstances precluded the timely filing of his claims. Staton has therefore not carried his burden of showing that the limitations period should be equitably tolled.

For the foregoing reasons, all claims against Judge White and Judge Carroll are **dismissed** as barred by judicial immunity and time-barred under 28 U.S.C. § 1915A(b)(1).

2. *Claims Based on 1998 and 2006 Arrests*

Staton has likewise failed to adequately establish that the claims based on the arrests or traffic stops that occurred on December 1998, September 2006, and November 2006—which I construe as equal protection and false arrest claims—are timely.

Staton suggests that he did not appreciate, and could not prove, that he was being pursued excessively by the police until after the 2018 and 2019 arrests. *See* Compl., Doc. No. 35, at 7 ("[M]alicious conducts could not be proven until the constant excessive police presences

9

gave considerable evidence for the plaintiff to realise he was being pursued excessively by Danbury police since January 18, 1999."). Staton, however, does not explain why he could not have brought suit and obtained relief at the time of each of the 1998 and 2006 arrests; critically, he fails to demonstrate why an "excessive" or "constant" police presence is a requisite fact to prove in order to prevail on his claims. Even if those details were needed to mount his claims, Staton does not articulate why the police's conduct would not have reached the necessary threshold of maltreatment until the fourth arrest in 2018. In any event, accrual of a cause of action arising out of the 1998 and 2006 arrests is not tolled merely because multiple police officers continued to effectuate stops or arrests. *See Smith v. Campbell*, 782 F.3d 93, 100 (2d Cir. 2015) ("The cause of action accrues even though the full extent of the injury is not then known or predictable.") (quoting *Wallace v. Kato*, 549 U.S. 384, 392 (2007)).

  Staton's claims are also not rendered timely by the continuing violation doctrine. Even when reading the complaint liberally, Staton has pled no facts to suggest that the false arrests at issue amount to anything other than "discrete unlawful acts." *Lucente v. Cty. of Suffolk*, 980 F.3d 284, 309 (2d Cir. 2020); *see also Frederick v. City of New York*, 2016 WL 8711395, at *11 (E.D.N.Y. Mar. 25, 2016) (holding that the continuing violation doctrine did not apply to false arrest claims because "false arrests are separate unlawful acts for which there is a legal remedy"). Moreover, with respect to his equal protection claim in particular, Staton has failed to plausibly allege the existence of an ongoing policy of discrimination. *See Lucente v. Cty. of Suffolk*, 980 F.3d 284, 309 (2d Cir. 2020) ("To trigger the continuing violation doctrine in the context of an Equal Protection claim, a plaintiff 'must allege both the existence of an ongoing policy of discrimination and some non-time-barred acts taken in furtherance of that policy.'") (citation omitted).

10

Finally, Staton has failed to raise a reasonable inference that he acted diligently to file his claims and that extraordinary circumstances are present. Equitable tolling is therefore not warranted.

For those reasons, after drawing all reasonable inferences in his favor, I conclude that Staton has not adequately demonstrated that his claims premised on his 1998 and 2006 arrests were timely. Those claims are therefore **dismissed** as time-barred under 28 U.S.C. § 1915A(b)(1).

3. *Claims Against Attorney Tunnard and Investigator Lawhon*

Staton has also failed to sufficiently plead that his claims against Attorney Tunnard and Investigator Lawhon are timely. Because Staton appears to take issue with Tunnard's and Lawhon's actions during criminal proceedings that occurred from 2007 to 2009, his causes of action accrued well before April 20, 2017, the start of the limitations period. There also is no indication that the continuing violation doctrine applies: no actionable conduct allegedly occurred after April 20, 2017, and the complaint does not adequately allege that the challenged conduct amounts to anything other than discrete unlawful acts. In addition, for the same reasons set forth above with respect to the claims arising out of Staton's 1998 and 2006 arrests, Staton proffers no facts to suggest that equitable tolling is warranted. Staton's claims against Tunnard and Lawhon are therefore **dismissed** as time-barred under 28 U.S.C. § 1915A(b)(1).

In the alternative, Staton's claims are barred by the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994), which held that a section 1983 claim is not colorable when a judgment in the plaintiffs' favor would necessarily imply the invalidity of an underlying conviction or sentence, unless the plaintiff can prove that "sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a tribunal authorized to make such

determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994).

In this case, because Staton's ineffective assistance of counsel claim, if successful, would call into question the validity of his underlying convictions, and because, as I explained in my initial review order, he has not alleged that his convictions have previously been invalidated or questioned, his claim is not cognizable under *Heck*. *See Kevilly v. New York,* 410 F. App'x 371, 374–35 (2d Cir. 2010) (concluding that ineffective assistance of counsel claims are barred by *Heck*).

To be sure, the Second Circuit has recognized that *Heck* may not bar a section 1983 action in certain situations where habeas relief was unavailable. *See, e.g., Jenkins v. Haubert*, 179 F.3d 19, 21 (2d Cir. 1999) (holding that a prisoner challenging "the imposition of intra-prison disciplinary sanctions that have no effect on the duration of the prisoner's overall confinement" was not barred by *Heck*); *Plonka v. Brown*, 2 F. App'x 194, 196 (2d Cir. 2001) ("remand[ing] the case to the district court to enable it to consider whether Plonka is in custody, in which case his § 1983 false arrest claim is barred by *Heck,* or whether Plonka is not in custody, in which case, under *Jenkins* and *Leather, Heck* does not apply"). Staton, however, articulates no facts to suggest that any of *Heck* exceptions apply to him. Accordingly, Staton's claims remain foreclosed by *Heck*.

E. <u>Defamation Claims</u>

Because all federal law clams have now been dismissed early on in the case, I decline to exercise supplemental jurisdiction over Staton's state law defamation claims. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) ("Under *Gibbs,* a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy,

convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims. When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice."). Staton's defamation claims are therefore **dismissed without prejudice** to refiling in state court.

F. Leave to Amend

Because granting Staton leave to amend his complaint a second time would be futile, I decline to do so. *See Wood ex rel. United States v. Applied Research Assocs., Inc.,* 328 F. App'x 744, 750 (2d Cir. 2009) ("One good reason to deny leave to amend is when such leave would be futile.").

IV. **Conclusion**

Because Staton has failed to correct the deficiencies identified in the initial review order, his claims remain **dismissed**. All pending motions (doc. nos. 10–12, 14–17, 19–21, 23–33, 36) are therefore **denied as moot**, and the Clerk is directed to enter judgment and close the case.

So ordered.

Dated at Bridgeport, Connecticut, this 27th day of January 2021.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge